FILED
11/18/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
KSR
1:24-cr-00533
Judge Sunil R. Harjani
Magistrate Judge Jeffrey Cole
RANDOM/CAT. 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. |
| v. | Violation: Title 18, United States Code, Sections 2441(a) and (d)(1)(B) |
| JAMIL HASSAN and ABDUL SALAM MAHMOUD | **UNDERSEAL** |

**COUNT ONE**

The SPECIAL NOVEMBER 2023 GRAND JURY charges:

1. At times material to this indictment:

**Syrian Armed Conflict**

a. The Syrian Arab Republic ("Syria") was a country bounded by the Mediterranean Sea to the west, Turkey to the north, Iraq to the east and southeast, Jordan to the south, and Israel and Lebanon to the southwest. The Syrian government was led by President Bashar al-Assad.

b. In or around March 2011, a peaceful uprising ("the Uprising") began in Syria by the Syrian civilian population against President Assad's government ("Syrian Regime" or "Regime"). Later in 2011, the Syrian Regime responded with violence against its civilian population that led to several internal groups taking up arms against the Syrian Regime.

c. By no later than on or about January 1, 2012, the conflict between the Syrian Regime and anti-Regime opponents who sought to remove President Assad from power and institute a new government ("the Syrian Opposition") escalated into

1

a civil war ("the Syrian Civil War"), which constituted a non-international armed conflict.

  d. In addition to the physical armed conflict with its opponents, the Syrian Regime sought to terrify, intimidate, and repress any opposition, or perceived opposition, to the Regime. During the Syrian Civil War, the Syrian Regime, through its military branches, detained, tortured, and killed civilian protesters, aid workers, journalists, students, and military defectors *en masse*. The goals of these detentions included: punishing civilians for supporting or participating in the Syrian Opposition; intimidating civilians to support or not oppose the Regime; gathering information about other perceived anti-Regime persons; and concealing these activities. Such detentions were used by the military in the context of the Syrian Civil War to advance the Syrian Regime's position in the war and to repress public support and momentum for the Syrian Opposition.

### Syrian Air Force Intelligence

  e. The Syrian Air Force Intelligence ("SAFI") is one of four Syrian Intelligence Agencies. SAFI, whose commanders have held close personal relationships with the president of Syria, was used by the Syrian Regime during the non-international armed conflict to identify, surveil, detain, physically and mentally abuse, kill, and repress Syrian civilians and others who were, or were perceived to be, opponents of the Syrian Regime.

  f. Defendant JAMIL HASSAN ("HASSAN") was the Director of SAFI. As part of his responsibilities, HASSAN oversaw a network of detention

facilities and prisons under SAFI control. One of the facilities controlled by SAFI was a prison located at the Mezzeh military airbase in the Mezzeh neighborhood of Damascus in Syria ("Mezzeh Prison").

g. Defendant HASSAN had the authority to order an individual to be detained and/or released at Mezzeh Prison. HASSAN also had the authority to dictate the level of physical or mental abuse a particular detainee received, and subordinates looked to him for guidance and permission regarding the detention and treatment of detained civilians at Mezzeh Prison.

h. Defendant ABDUL SALAM MAHMOUD ("MAHMOUD") was a Brigadier General in SAFI. MAHMOUD was in charge of SAFI operations at the Mezzeh military airbase, including at Mezzeh Prison.

i. Defendant MAHMOUD was a direct subordinate to defendant HASSAN. HASSAN and MAHMOUD directly interacted with detainees at Mezzeh Prison and their family members. MAHMOUD sought authority and permissions from HASSAN on the detention and treatment of detainees, and MAHMOUD followed HASSAN's instruction regarding detention and treatment of detainees at Mezzeh Prison. MAHMOUD had authority over other SAFI personnel who worked at Mezzeh Prison.

j. Both defendants HASSAN and MAHMOUD retained offices at the Mezzeh military airbase.

2. Victims detained at Mezzeh Prison between 2012 and 2019 included United States citizens, Syrian citizens, and dual national citizens.

3. Beginning no later than on or about January 1, 2012, and continuing until at least in or around July 2019, in an offense begun and committed outside the jurisdiction of any particular State or district of the United States, including in and around Damascus, Syria and elsewhere,

> JAMIL HASSAN and
> ABDUL SALAM MAHMOUD,

defendants herein, together with others known and unknown to the Grand Jury, including other SAFI personnel, committed the war crime of knowingly and intentionally conspiring to commit cruel and inhuman treatment, that is, an act intended to inflict severe and serious physical and mental pain and suffering (other than pain and suffering incidental to lawful sanctions), including serious physical abuse, upon victims within their custody or control, namely U.S. citizens and other detainees held at Mezzeh Prison in Damascus, Syria, in the context of, and in association with, an armed conflict not of an international character.

4. It was part of the conspiracy that defendants HASSAN and MAHMOUD, and their co-conspirators, agreed to identify, intimidate, threaten, deter, punish, immobilize, and kill individuals whom the Syrian Regime suspected of aiding and supporting the Regime's armed opponents, such as through anti-Regime protest, the provision of medical aid, and public criticism of the Regime, in the armed conflict between the Regime and the Syrian Opposition.

5. It was further part of the conspiracy that defendants HASSAN and MAHMOUD, and their co-conspirators, arrested and caused to be arrested many civilians who protested the Syrian Regime during and after the Uprising, or who the

Syrian Regime viewed as opponents of the Regime, and detained them at Mezzeh Prison.

6.     It was further part of the conspiracy that defendants HASSAN and MAHMOUD, and their co-conspirators, detained and caused to be detained large numbers of civilians at Mezzeh Prison. Detainees were predominantly Syrian nationals, but foreign nationals and dual nationals, including United States citizens, were also detained.

7.     It was further part of the conspiracy that defendants HASSAN and MAHMOUD, and their co-conspirators, did commit and cause to be committed the following acts with respect to one or more victims detained at Mezzeh Prison:

a.     regularly whipping victims with hoses;

b.     beating victims with cables, sticks, pipes, and other instruments, including striking a victim with a PVC pipe on the palms and soles of his feet until he could no longer stand;

c.     punching victims in the face multiple times, including breaking a victim's teeth and causing a loss of consciousness;

d.     kicking victims;

e.     stripping victims naked;

f.     electrocuting victims;

g.     forcibly removing victims' toenails;

h.     burning victims with cigarettes, hot liquids, and acid; and

5

      i.      hanging victims by their bound wrists and raising their feet off the ground for prolonged periods.

    8.      It was further part of the conspiracy that defendants HASSAN and MAHMOUD, and their co-conspirators, did commit and cause to be committed the following acts with respect to one or more victims detained at Mezzeh Prison:

      a.      threatening victims with death and physical abuse, including electrocution and rape;

      b.      threatening to harm victims' family members, including by threatening victims that SAFI personnel would detain, kill, sexually assault, and otherwise physically abuse members of victims' families;

      c.      trying to coerce victims into making false confessions by detaining and threatening the victims' family members;

      d.      falsely telling victims that their family members had already been killed or detained.

    9.      It was further part of the conspiracy that defendants HASSAN and MAHMOUD, and their co-conspirators, created and caused to be created an atmosphere of terror at Mezzeh Prison by subjecting one or more victims to frequent and arbitrary physical and mental abuse and exposing one or more victims to the physical abuse suffered by other victims, including by:

      a.      exposing victims to regularly hearing the screams and cries of other victims;

  b. subjecting victims to seeing other victims tied up and hanging from their wrists;

  c. subjecting victims to seeing other victims with visible injuries and infections;

  d. blindfolding a victim during an interrogation with a blindfold that was covered in blood;

  e. subjecting victims to seeing blood on the walls; and

  f. subjecting victims to seeing dead bodies in the cells.

10. It was further part of the conspiracy that defendants HASSAN and MAHMOUD, and their co-conspirators confined and caused to be confined one or more victims held at Mezzeh Prison in horrific conditions, including by:

  a. confining victims to severely overcrowded cells, including with the dead bodies of other victims that emitted a foul odor;

  b. holding victims in grossly unsanitary conditions; and

  c. denying victims adequate food, water, and medical treatment.

11. It was further part of the conspiracy that the defendants hid, misrepresented, concealed, and caused to be misrepresented, concealed and hidden, the object of and acts done in furtherance of the conspiracy.

In violation of Title 18, United States Code, Sections 2441(a) and (d)(1)(B).

A TRUE BILL:

_____
FOREPERSON

_____  _____
MORRIS PASQUAL  NICOLE M. ARGENTIERI
ACTING UNITED STATES ATTORNEY  PRINCIPAL DEPUTY ASSISTANT
ATTORNEY GENERAL
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE